UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br>EDWARD MONET KNIGHT,<br><br>Defendant. | Case No. 3:19-cr-00038-MMD-CLB<br><br>ORDER |

**I.   SUMMARY**

On August 1, 2019, a grand jury indicted Defendant Edward Monet Knight on two counts of Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951, and two counts of Use of a Firearm During and in Relation to a Crime of Violence, for two armed robberies of local businesses. (ECF No. 14.) Trial is scheduled for November 17, 2020. (ECF No. 60.) Before the Court is Knight's motion for access to jury selection records and materials under 28 U.S.C. § 1867(f), the Jury Selection and Service Act of 1988 ("JSSA").[1] (ECF No. 61 (the "Motion").) As further explained below, the Court will grant the Motion in part, and deny it in part. Because the JSSA grants criminal defendants the right to access jury selection records in preparation for a fair cross-section challenge, and Knight states he is preparing to make one if the records suggest such a challenge would be meritorious, the Court will generally grant Knight's requests, and will generally instruct the Clerk of Court to provide any responsive information that it has available to it within a reasonable period of time. However, to the extent Knight is asking the Clerk of

---

[1] The government opposes the Motion. (ECF No. 62.) Knight filed a reply. (ECF No. 65.)

Court to answer specific questions or produce unavailable information, the Motion is denied.[2]

## II. DISCUSSION

Knight requests access to grand jury and petit jury records under 28 U.S.C. § 1867(f) of the JSSA. The JSSA provides that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community in the district or division wherein the court convenes." *See* 28 U.S.C. § 1861. The Sixth Amendment similarly guarantees criminal defendants an 'impartial jury' which includes the right to have a jury selected from a fair cross-section of the community. *See Taylor v. Louisiana,* 419 U.S. 522, 528-31 (1975). To support a fair cross-section claim under the JSSA, Section 1867(f) states:

> "the contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . . as may be necessary in the preparation or presentation of a motion under . . . this section. . . . The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion."

28 U.S.C. § 1867(f). In *Test v. United States*, the Supreme Court held that the plain text of Section 1867(f) gives defendant an "essentially . . . unqualified right to inspect jury lists . . . in the preparation of motions challenging jury-selection procedures." 420 U.S. 28, 30 (1975) (footnotes omitted). The Court reasoned that the right to inspect is not only required by the plain language, but the overall purpose of the statute—to ensure juries are selected from a fair cross-section of the community. *See id.* Furthermore, access to records cannot be conditioned on a showing of a probability of success on the merits of a later jury-selection challenge, but rather defendants need only demonstrate intent to prepare a motion to challenge. *See United States v. Beaty*, 465 F.2d 1376, 1380 (9th Cir. 1972).

///

---

[2] For example, Knight's request for information related to the selection of the petit jury is denied without prejudice because the petit jury has not yet been selected, and thus such records do not exist.

Knight argues that he is statutorily and constitutionally entitled to the requested jury selection information. (ECF No. 61 at 1-2.) Knight points to the plain text of 28 U.S.C. § 1867(f) and the broad holding in *Test v. United States* to argue that he has an "unqualified" right to jury selection materials to ensure the grand jury that indicted him and the petit jury that will try his case were selected from a fair cross-section of the community. (*Id.*) Pursuant to the holding in *Beaty,* Knight explicitly indicates his intent to exercise his right to challenge the jury selection procedure if the records reveal that the selection procedure does not comply with the law. (*Id.* at 2.) In particular, Knight argues he is entitled to 22 categories of records:

1. Juror Selection Plan for the Federal District of Nevada ("the Jury Selection Plan");[3]
2. Temporary Juror Selection Plan or Order to accommodate the COVID-19 pandemic;
3. Any division or district AO-12 or JS-12 forms created relating to the Master Jury Wheel or Qualified Jury Wheel;
4. Any statistical or demographic analyses produced to ensure quality and compliance of Master Jury Wheel and Qualified Jury Wheel;
5. Date Master Jury Wheel used to summon grand jurors in this case was refilled;
6. General Notice as described in Jury Selection Plan Section 1.11;
7. The date when grand jurors were summoned in this case;
8. The number of persons summoned from the Qualified Jury Wheel to be considered as grand jurors in this case;
9. The calculation of proportionality as described in Jury Selection Plan Section 2.03;

---

[3]The government provided a copy of the Jury Selection Plan in an exhibit attached to its response (ECF No. 62-1), and the Court subsequently posted it publicly. United States District Court for the District of Nevada, *Plan for the Random Selection of Grand and Petit Jurors* (Amended Jan. 25, 2017), https://www.nvd.uscourts.gov/wp-content/uploads/2020/07/9th-Amended-Jury-Plan-Nevada-1-25-2017.pdf. In any event, Knight's counsel presumably has access to the Jury Selection Plan since numerous requests identified in the Motion reference specific sections of the Plan.

3

10. The calculation of proportionality as described in the Jury Selection Plan Section 4.05(b);
11. The basis (divisional, combined, or entire district) for the grand jury in this case;
12. Divisional and District Master Jury Wheels data as described in Jury Selection Plan Section 1.09;
13. Divisional and District Qualified Jury Wheels data as described in Jury Selection Plan Section 3.05;
14. Status codes for potential jurors who were selected from the Master Jury Wheel for qualification but either had their qualification form returned, did not respond, or were disqualified or exempted from jury service;
15. The juror number and status for persons whose juror summons and qualification form were not returned or returned as undeliverable;
16. Juror numbers for persons summoned to appear in the Clerk's Office to complete a juror-qualification questionnaire;
17. Juror numbers for persons selected as potential grand jurors in this case;
18. Sources of data for Master Jury Wheel used to summon grand jurors in this case as described in Jury Selection Plan Section 2.01;
19. Juror qualification and/or summons forms for persons summoned to potentially become grand or trial jurors in this case;
20. Any temporary or alternative juror qualification and/or summons forms utilized to accommodate COVID-19;
21. Disposition of each summoned grand or trial juror in this case as to excusal, deferment, disqualification, or selection; and
22. The attendance record and reason for absence by date for each grand juror.[4]

(ECF No. 61 at 2-6.)

///

---

[4] In his reply, Knight concedes that Request No. 22 (referenced as Request No. 21 in the reply) is no longer necessary because the grand jury did not meet during the pertinent portion of the COVID-19 pandemic. (ECF No. 65 at 13.)

The Court finds that Knight is entitled to the requested records insomuch as they are available to the Clerk of Court at this time. The Court specifically finds that the plain language of Section 1867(f) in view of the Supreme Court's holding in *Test* provides criminal defendants the right to access "contents of records or papers used by the jury commission or clerk in connection with the jury selection process" as "necessary in preparation or presentation of a motion" challenging the jury selection process. *See* 28 U.S.C. § 1867(f); *see also Test,* 420 U.S. at 30. Knight has satisfactorily demonstrated an intent to prepare a motion to challenge.[5] The Court further concludes that Knight has sufficiently demonstrated through his expert witness Jeffrey Martin that the requested information is "necessary" for preparing a fair cross-section challenge. Thus, as discussed below, although the government seeks to distinguish between the necessity of some records over others, the Court concludes that the entirety of the information requested, to the extent they are available to the Clerk of Court, will facilitate Knight's analysis in preparation for a fair cross-section challenge. Finally, the Court finds that while Knight is entitled to "contents of records or papers used by . . . the clerk in connection with the jury selection process" he is not entitled to request the Clerk of Court answer questions, or produce material currently unavailable. Such requests are outside the scope of the statute and are therefore denied.

The government concedes that some (of the 22) requests are appropriate, but maintains that despite the broad holding in *Test,* much of the requested information cannot be disclosed. (ECF No. 62.) The government begins by making four general arguments as to why the Court should deny Knight's Motion, and then introduces specific objections in response to specific requests. None are persuasive.

First, the government contends that Knight's request pertaining to the grand jury selection procedure is untimely. (ECF No. 62 at 6.) Knight was indicted on August 1, 2019

---

[5]Specifically, Knight states: "Here, should the jury selection records indicate that the grand juries or jury venires selected do not reflect a fair cross section of the community, Defendant intends to exercise his right to challenge the jury selection procedures." (ECF No. 61 at 2.)

1  (ECF No. 14) and filed this Motion on June 26, 2020 (ECF No. 61). The government
2  argues that under Section 1867(a) this span of 11 months will make any subsequent
3  motion untimely, ultimately suggesting the current motion is a "waste of judicial
4  resources." (ECF No. 62 at 6.) The Court finds this argument unpersuasive. While the
5  time limitations might prohibit Knight from making a timely fair cross-section challenge,
6  that issue is not before the Court at this time. Indeed, the government itself acknowledges
7  the time limitations in Section 1867(a) do not necessarily prohibit Knight from requesting
8  materials.[6] Rather, as the Ninth Circuit held in *People of Territory of Guam v. Palomo*,
9  511 F.2d 255, 257-58 (9th Cir. 1975), the decision of timeliness rests "in the sound
10 discretion of the court."[7] Thus, the Court rejects the government's general timeliness
11 objection.

12      Second, the government contends that Knight's request for records regarding the
13 petit jury process are premature. (ECF No. 62 at 6.) More specifically, the government
14 argues that any temporary jury selection measures in place due to COVID-19 are likely
15 to change before the date of Knight's jury selection, and Knight should only be permitted
16 to inspect the records at a time when it is relevant to his pending jury selection date. (*Id.*)
17 The Court is generally unpersuaded by the government's argument, subject to the
18 following exceptions. As to information regarding the petit jury process, any temporary
19 jury selection measures in place because of COVID-19 have generally remained
20 unchanged since August 2020.[8] Thus, the Clerk of Court is instructed to provide general

---

[6] Stating in their response, "[a]lthough the time limitations set forth in Section 1867(a) may not necessarily prohibit Knight from requesting materials under Section 1867(f)…" (ECF No. 62 at 6 (citing *People of Territory of Guam v. Palomo*, 511 F.2d 255, 257-58 (9th Cir. 1975)).)

[7] There, defendant moved to inspect jury records the day of trial, and the court held that "although 28 U.S.C. 1867(a) does not control the time for such a motion, the motion was clearly untimely under the procedures used in trial courts for the processing and trial of cases. The decision in such a situation rests in the sound discretion of the court." *People of Territory of Guam*, 511 F.2d at 257.

[8] On August 27, 2020, the Court issued the Second Amended Temporary General Order 2020-03 "to allow jury trials to proceed in accordance with the Court's internal plan

responsive information regarding the petit jury process—and modifications made to address COVID-19 risks relating to the petit jury summons and selection process—available to it now. However, the Court finds Knight's specific requests regarding the summoning of a petit jury for this case premature because a petit jury has not been summoned—and these records are therefore unavailable.[9] In sum, the Court finds the government's argument regarding prematurity unpersuasive to the extent the Clerk of Court has the information Knight is seeking. The Clerk of Court is therefore instructed to provide any responsive material currently available to it.[10]

Third, the government argues that access would be an "unwarranted intrusion on juror privacy." (ECF No. 62 at 5.) But while the Court shares the government's concerns about maintaining juror privacy, the parties agree that individual juror information should be protected to the extent any information is disclosed to Knight. (ECF No. 62 at 5; ECF No. 65 at 6.) Knight specifically requests that any personal or identifying information be omitted and offers to review the material in the Clerk's Office if redaction is not feasible. (ECF No. 60 at 4-5; ECF No. 65 at 6.) Thus, the Court finds the government's general concerns regarding intrusion on juror privacy will be properly addressed given Knight's shared, stated commitment to protecting their privacy, but directs the Clerk of Court to

---

for resuming jury trials." Second Am. Temp. Gen. Order 2020-03, (Aug. 27, 2020), https://www.nvd.uscourts.gov/wp-content/uploads/2020/09/Second-Amended-General-Order-2020-03.pdf. A summary of that plan is also publicly posted. United States District Court for the District of Nevada, *Summary of Plan for Resuming Jury Trials* (Sept. 2, 2020), https://www.nvd.uscourts.gov/wp-content/uploads/2020/09/COVID-Summary-Plan-Resum-Jury-Trials.pdf. The Court anticipates that the summary of the plan will be revised to remove reference to short trials proceeding first.

[9] Specifically, Request Nos. 15, 19, and 21. (ECF No. 61 at 5-6.) Request No. 15 seeks the juror number and status for persons whose juror summons and qualification form were not returned or returned as undeliverable. (*Id.* at 5.) Request No. 19 seeks juror qualification and/or summons forms for persons summoned to potentially become grand or trial jurors in this case. (*Id.* at 5.) Request No. 21 seeks the disposition of each summoned grand or trial juror in this case as to excusal, deferment, disqualification, or selection. (*Id.* at 6.)

[10] For clarity, Knight may seek anything unavailable at this time again, in the future, provided it becomes available to the Clerk of Court. However, the Clerk of Court has no continuing obligation to supplement available information.

take the necessary measures to ensure individual juror privacy is protected as to any information it discloses in accordance with this order.

Finally, the government argues that Knight's request for jury selection materials from the entire District of Nevada is improper, as only material from the unofficial Northern Division should be discoverable. (ECF No. 62 at 6-7.) In particular, the government argues that jury selection materials from the unofficial Southern Division are not relevant to any motion Knight might raise because this is a Northern Nevada case. (*Id.* at 7.) The Court disagrees.

The Court finds that because the Jury Selection Plan covers the entire District of Nevada, information for the district as a whole will be necessary in Knight's evaluation of the Plan.[11] More specifically, the Jury Selection Plan divides Nevada's counties into three jury-management divisions: Las Vegas Jury Division, Reno Jury Division, and Elko Jury Division.[12] (ECF No. 62-1 at 3-4.) Further, the government is correct that Knight's petit jury will be drawn only from the Reno Jury Division, and his grand jury was drawn only from the Reno or Reno and Elko Jury Divisions. (ECF No. 62 at 6-7.) But, because data is collected as one process, Knight requests Districtwide data in order to analyze "internal consistency of the data and completeness of the juror lists" in preparation for a future fair cross-section challenge. (ECF No. 61 at 5.) Thus, the Court finds that information from the entire District is relevant and should be provided.

In sum, the Court rejects the government's general arguments, finding that Knight's request is not untimely or premature, juror privacy may be properly protected, and Districtwide data is necessary for any cross-section challenge he may bring.

///

---

[11]As noted in his Motion, Knight requests entire District records in order to analyze "internal consistency of the data and completeness of the juror lists." (ECF No. 61 at 5.)

[12]The Las Vegas Division encompasses Clark, Esmeralda, Lincoln, and Nye counties. The Reno Jury Division encompasses Carson City, Churchill, Douglas, Lander, Lyon, Mineral, Pershing, Storey, and Washoe counties. The Elko Jury Division encompasses Elko, Eureka, Humboldt, and White Pine counties.

In addition to its general arguments, the government also argues that many of Knight's specific requests are unnecessary to prepare a challenge, or not relevant to a potential challenge. (ECF No. 62 at 5, 8, 10-18.) The Court again disagrees. Section 1867(f) provides that "the contents of records or papers . . . shall not be disclosed, except . . . as may be necessary in the preparation or presentation of a motion." 28 U.S.C. § 1867(f). Although the government argues ten of the 22 requests are unnecessary or irrelevant to a future challenge, in reviewing the requests as a whole, the Court finds Knight adequately demonstrated a need for the requested information. The Court is particularly persuaded by the written testimony of Knight's expert witness, who confirms that the requested information will be necessary to ensure the procedures in the jury plan are not only implemented correctly, but consistent with the plan as a whole.[13] (ECF No. 65-1 at 4-5.) Thus, the Court is unpersuaded by the government's argument as to certain of Knight's specific requests.

In sum, the Court grants in part and denies in part Knight's Motion. Because the Court is cognizant of the burden on the Clerk of Court, the Court directs the Clerk of Court to provide only the requested information available to it. To the extent Knight seeks answers to specific questions or production of unavailable information, those requests are denied. The Clerk of Court is further instructed to coordinate with the parties to provide the requested information available to it within a reasonable period of time.

### III.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

---

[13]Additionally, the expert concludes that the need for data on the jury plan process is necessary because "it is common to see jury plans require some interpretation to implement and from those interpretations unintended consequences might follow[;]" thus, in order to "analyze systematic causes of under representation, data on the sources of data and the processes used to construct the jury list are critical." (ECF No. 65-1 at 5.)

1    It is therefore ordered that Knight's motion for access to jury selection records and materials (ECF No. 61) is granted in part, and denied in part, as explained above.

The Clerk of Court is instructed to produce for inspection, copying, or scanning the information available to it in response to Knights' 22 requests within a reasonable period of time to both defense counsel and the government. The Court will set a status conference to receive an update on the status of such production if needed.

DATED THIS 20th Day of October 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE